# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JASON MAURICE SCOTT,

                     Plaintiff,

vs.

EQUIFAX INFORMATION
SERVICES LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.;
and TRANS UNION, LLC,

                     Defendants.

CASE NO.:

**JURY TRIAL
DEMANDED**

## COMPLAINT

Jason Maurice Scott ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, arising out of the credit bureau Defendants' reporting inaccurate credit account information.

## PRELIMINARY STATEMENT

1

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning

individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.      Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

3

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8. Plaintiff's claims arise out of the credit bureau defendants' blatantly inaccurate credit reporting, wherein Defendants Equifax, Experian, and Trans Union reported an inaccurate balance on a credit account.

9. Accordingly, Plaintiff brings claims against Defendants Equifax, Experian, and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA,

15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

10.    This action seeks actual, statutory, and punitive damages, costs and attorneys' fees for Plaintiff against Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,* as described herein.

## **THE PARTIES**

11.    Plaintiff Jason Maurice Scott ("Plaintiff") is a natural person who resides in the State of Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

12.    Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company and resides in the State of Georgia, including in this District.

13.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

14.    Defendant Experian Information Solutions, Inc. ("Experian") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

15.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

16.    Defendant Trans Union, LLC ("Trans Union") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

17.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

20.    Plaintiff mailed multiple written disputes regarding inaccurate information in his Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

21.    Defendant Equifax received Plaintiff's multiple written disputes in Fulton County; Atlanta, Georgia.

22.    Upon receipt of Plaintiff's disputes, Defendant Equifax forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant Equifax's electronic communications, which originated from Atlanta, Georgia, by sending its results electronically to Defendant Equifax in Fulton County; Atlanta, Georgia

23.    Defendant Equifax then processed the dispute results at its National Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiff its final dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

24.   The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

25.   The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

26.   The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**The Credit Bureau's Processing of Credit Information**

27.   Defendants Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

28.   These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

29.     Defendants collect information from thousands of furnishers.

30.     The process by which Defendants receive, sort, and store information is largely electronic.

31.     Furnishers report credit information to Defendants through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

32.     Defendants take the credit information reported by furnishers and create consumer credit files.

33.     Defendants maintain credit files on more than 200 million consumers.

34.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

## The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

35.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

36.     Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows

data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

37.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

38.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

39.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

40.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

41.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

42.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

43.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

44.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Inaccurate Account Reporting on Plaintiff's Equifax Credit File as of May 14, 2024**

45.    Upon information and belief, as of May 14, 2024, Plaintiff's Equifax credit report was reporting an inaccurate balance on the following account:

> Account Name Department of Education / Nelnet
> Account Number XXXXXXXXX
> Inaccurate balance reported: $55,125

**Plaintiff's Dispute with Equifax on or about May 14, 2024**

46. On or about May 14, 2024, Plaintiff filed a dispute regarding the inaccurate balance reporting on the following account, because Defendant Equifax was reporting an incorrect balance.

47. Plaintiff's May 14, 2024 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**Equifax's Response to Plaintiff's May 14, 2024 Dispute**

48. Defendant Equifax did not respond to Plaintiff's May 14, 2024 dispute.

49. Defendant Equifax did not indicate that Plaintiff's disputes were found to be frivolous or irrelevant.

50. Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

51. Thereafter, Defendant Equifax continued to report an inaccurate account balance on Plaintiff's credit file.

52. Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

12

**Inaccurate Account Reporting on Plaintiff's Experian Credit File as of May 22, 2024**

53.    Upon information and belief, as of May 22, 2024, Plaintiff's Experian credit report was reporting an inaccurate balance on the following account:

> Account Name Department of Education / Nelnet
> Account Number 900000XXXXXXXXX
> Inaccurate balance reported: $55,125

**Inaccurate Account Reporting on Plaintiff's Trans Union Credit File as of May 22, 2024**

54.    Upon information and belief, as of May 22, 2024, Plaintiff's Trans Union credit report was reporting an inaccurate balance on the following account:

> Account Name Department of Education / Nelnet
> Account Number 900000XXXXXXXXX
> Inaccurate balance reported: $55,125

**Capital One Auto Finance Denies Plaintiff Credit Due to Defendants' Inaccurate Credit Reporting on May 22, 2024**

55.    On or about May 22, 2024, Plaintiff attempted to obtain credit for an auto loan and submitted a credit application.

56.    Shortly thereafter, on or about May 22, 2024, Capital One Auto Finance denied Plaintiff's credit application based upon the contents of Plaintiff's credit reports.

57.    Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that Plaintiff's bills are paid in-full and on-time each month. Plaintiff believes and understands that Plaintiff's credit record with Plaintiff's creditors is good, so Plaintiff could not imagine how Plaintiff's credit application had been denied.

### Plaintiff's June 6, 2024 Dispute with Experian

58.    On or about June 6, 2024, Plaintiff filed a telephonic dispute regarding the inaccurate balance reporting on the following account, because Defendant was reporting an incorrect balance.

59.    Plaintiff's June 6, 2024 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

### Experian's Response to Plaintiff's June 6, 2024 Dispute

60.    Defendant Experian did not respond to Plaintiff's June 2024 dispute.

61.    Defendant Experian did not indicate that Plaintiff's disputes were found to be frivolous or irrelevant.

62.    Defendant Experian failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

14

63.    Thereafter, Defendant Experian continued to report an inaccurate account balance on Plaintiff's credit file.

64.    Defendant Experian failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

## Plaintiff's June 12, 2024 Dispute with Equifax

65.    On or about June 12, 2024, Plaintiff filed a dispute regarding the inaccurate balance reporting on the following account, because Defendant Equifax was reporting an incorrect balance.

66.    Plaintiff's June 12, 2024 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

## Equifax's Response to Plaintiff's June 6, 2024 Dispute

67.    Defendant Equifax did not respond to Plaintiff's June 2024 dispute.

68.    Defendant Equifax did not indicate that Plaintiff's disputes were found to be frivolous or irrelevant.

69.    Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

15

70. Thereafter, Defendant Equifax continued to report an inaccurate account balance on Plaintiff's credit file.

71. Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

## Plaintiff Denied Credit Due to Defendants' Inaccurate Credit Reporting in June 2024

72. In June 2024, Plaintiff attempted multiple times during the month of June to obtain credit for an auto loan and submitted a credit application.

73. Shortly thereafter, Plaintiff was denied an auto loan by Ally Financial, SM Auto Brokers, Capital One Auto Finance, Westlake, Carolina Finance, Taurani Inc, First Interstate Bank, Trinity Motor Car Company, Global Lending, Carxoom Via Promax Marietta Auto Mall, Capital One Via Dealer, and JPMCB Auto Finance based upon the contents of Plaintiff's credit reports.

74. Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that Plaintiff's bills are paid in-full and on-time each month. Plaintiff believes and understands that Plaintiff's credit record with Plaintiff's creditors is good, so Plaintiff could not imagine how Plaintiff's credit applications had been denied.

**Plaintiff Offered Inflated Interest Rate Due to Defendants' Inaccurate Credit Reporting in or about July 2024**

75. In or about July 2024, Plaintiff attempted to obtain credit for an auto loan and submitted a credit application.

76. Shortly thereafter, in or about July 2024, JPMCB Auto offered Plaintiff an increased interest on an auto loan rate based upon the contents of Plaintiff's credit reports.

77. Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that Plaintiff's bills are paid in-full and on-time each month. Plaintiff believes and understands that Plaintiff's credit record with Plaintiff's creditors is good, so Plaintiff could not imagine how Plaintiff received an increased credit interest rate.

**Ally Bank Denies Plaintiff Credit Due to Defendants' Inaccurate Credit Reporting on October 5, 2024**

78. On or about October 5, 2024, Plaintiff applied for credit and submitted a credit application.

79. Shortly thereafter, on or about May 30, 2024, Ally Bank denied Plaintiff's credit application based upon the contents of Plaintiff's credit reports.

17

80.    Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that Plaintiff's bills are paid in-full and on-time each month. Plaintiff believes and understands that Plaintiff's credit record with Plaintiff's creditors is good, so Plaintiff could not imagine how Plaintiff's credit application had been denied.

## Inaccurate Account Reporting on Plaintiff's Experian Credit File as of April 29, 2025

81.    Upon information and belief, as of April 29, 2025, Plaintiff's Experian credit report was reporting an inaccurate balance on the following account:

Account Name Department of Education / Nelnet
Account Number 900000XXXXXXXXX
Balance: $55,125

## Inaccurate Account Reporting on Plaintiff's Trans Union Credit File as of April 29, 2025

82.    Upon information and belief, as of April 29, 2025, Plaintiff's Trans Union credit report was reporting an inaccurate balance on the following account:

Account Name Department of Education / Nelnet
Account Number 900000XXXXXXXXX
Balance: $55,125

## Defendant Equifax Fails to Provide Credit Disclosure

18

83.    On or about August 22, 2025, Plaintiff requested a credit disclosure from Defendant Equifax.

84.    Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Inaccurate Account Reporting on Plaintiff's Experian Credit File as of August 22, 2025**

85.    Upon information and belief, as of August 22, 2025, Plaintiff's Experian credit report was reporting an inaccurate balance on the following account:

> Account Name Department of Education / Nelnet
> Account Number 900000XXXXXXXXXX
> Balance: $6,641

**Inaccurate Account Reporting on Plaintiff's Trans Union Credit File as of August 22, 2025**

86.    Upon information and belief, as of August 22, 2025, Plaintiff's Trans Union credit report was reporting an inaccurate balance on the following account:

> Account Name Department of Education / Nelnet
> Account Number 900000XXXXXXXXXX
> Balance: $6,641

**Plaintiff's September 9, 2025 Dispute with Equifax, Experian, and Trans Union**

19

87.     On or about September 9, 2025, Plaintiff filed a dispute regarding the inaccurate balance reporting on the following account, because Defendants were reporting an incorrect balance.

88.     Plaintiff's September 9, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**Equifax's Response to Plaintiff's September 9, 2025 Dispute**

89.     Upon receiving Plaintiff's September 9, 2025 dispute, Equifax sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct XXXXXXXXX
> Balance: $6,720

90.     Department of Education / Nelnet verified for Equifax that Account XXXXXXXXX belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

91.     Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax failed

to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

92.    Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

### Experian's Response to Plaintiff's September 9, 2025 Dispute

93.    Upon receiving Plaintiff's September 9, 2025 dispute, Experian sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct #90000085667****
> Balance: $6,720

94.    Department of Education / Nelnet verified for Experian that Account #90000085667**** belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

95.    Experian Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

96.    Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

21

**Trans Union's Response to Plaintiff's September 9, 2025 Dispute**

97.    Upon receiving Plaintiff's September 9, 2025 dispute, Trans Union sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct #90000085667****
> Balance: $6,720

98.    Department of Education / Nelnet verified for Trans Union that Account #90000085667**** belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

99.    Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Trans Union failed to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

100.    Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

**Inaccurate Account Reporting on Plaintiff's Equifax Credit File as of October 3, 2025**

101.    Upon information and belief, as of October 3, 2025, Plaintiff's Equifax credit report was reporting an inaccurate balance on the following account:

Account Name Department of Education / Nelnet
Account Number XXXXXXXXX
Inaccurate balance reported: $6,720

**Plaintiff's October 17, 2025 Dispute with Equifax, Experian, and Trans Union**

102. On or about October 17, 2025, Plaintiff filed a dispute regarding the inaccurate balance reporting on the following account, because Defendants were reporting an incorrect balance.

103. Plaintiff's dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**Equifax's Response to Plaintiff's October 17, 2025 Dispute**

104. Defendant Equifax did not respond to Plaintiff's October 17, 2025 dispute.

105. Defendant Equifax did not indicate that Plaintiff's disputes were found to be frivolous or irrelevant.

106. Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

107. Thereafter, Defendant Equifax continued to report an inaccurate account balance on Plaintiff's credit file.

108. Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

### Experian's Response to Plaintiff's October 17, 2025 Dispute

109. Upon receiving Plaintiff's October 17, 2025 dispute, Experian sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct #90000085667****
> Balance: $6,720

110. Department of Education / Nelnet verified for Experian that Account #90000085667**** belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

111. Experian Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

112. Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

**Trans Union's Response to Plaintiff's October 17, 2025 Dispute**

113.    Upon receiving Plaintiff's October 17, 2025 dispute, Trans Union sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct #90000085667****
> Balance: $6,720

114.    Department of Education / Nelnet verified for Trans Union that Account #90000085667**** belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

115.    Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Trans Union failed to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

116.    Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

**Plaintiff's Dispute with Equifax and Experian on or about December 17, 2025**

25

117.   On or about December 17, 2025, Plaintiff filed a dispute regarding the inaccurate balance reporting on the following account, because Defendants were reporting an incorrect balance.

118.   Plaintiff's dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**Equifax's Response to Plaintiff's December 17, 2025 Dispute**

119.   Defendant Equifax did not respond to Plaintiff's December 17, 2025 dispute.

120.   Defendant Equifax did not indicate that Plaintiff's disputes were found to be frivolous or irrelevant.

121.   Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

122.   Thereafter, Defendant Equifax continued to report an inaccurate account balance on Plaintiff's credit file.

123.   Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Experian's Response to Plaintiff's December 17, 2025 Dispute**

26

124. Upon receiving Plaintiff's December 17, 2025 dispute, Experian sent an ACDV to the following furnisher regarding the following credit account Plaintiff disputed:

> Department of Education / Nelnet Tradeline
> Partial Acct #90000085667****
> Balance: $6,720

125. Department of Education / Nelnet verified for Experian that Account #90000085667**** belongs to Plaintiff and that the account balance is accurately reporting on his credit report.

126. Experian Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to properly reinvestigate and correct the error on the disputed credit account, which continued to appear on Plaintiff's Equifax credit report.

127. Thereafter, Defendant continued to report an inaccurate account balance on Plaintiff's credit file.

128. Within the two (2) years previous to the filing of this Complaint, Defendants prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiff that contained misleading and inaccurate information.

27

129. Defendants failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiff.

130. Defendants have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports, in violation of 15 U.S.C. § 1681e(b).

131. Defendants' failures to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports was negligent and/or willful.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim For Relief Against Defendants)**

132. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

133. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

28

preparation of the credit reports and credit file they published and maintain concerning Plaintiff.

134. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having inaccurate credit account information in his credit file.

135. Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

136. Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

137. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

138. Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after it received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

139. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having inaccurate credit account information in his credit file.

140. Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

141.    Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681g
### Failure to Provide Disclosures to Plaintiff

142.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

143.    Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff's credit disclosure after each request.

144.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

145.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

146.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)   Determining that each Defendant negligently and/or willfully violated the FCRA; and

b)   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

147.   Plaintiff demands a trial by jury.

Dated:       3/30/2026              JOSEPH P. MCCLELLAND, LLC


                                   */s/ Joseph P. McClelland*
                                   Joseph P. McClelland
                                   LAW FIRM OF JOSEPH P.
                                   MCCLELLAND, LLC
                                   Georgia Bar No: 483407
                                   691 John Wesley Dobbs Avenue NE, Suite
                                   U-3
                                   Atlanta, GA 30312
                                   Telephone: (770) 775-0938

32

Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*